UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SANDRA J. WARTHAN,

                              Plaintiff,

v.                                                      7:16-CV-0036
                                                        (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                                            OF COUNSEL:

CONBOY, McKAY, BACHMAN & KENDALL, LLP                   PETER L. WALTON, ESQ.
  Counsel for Plaintiff
407 Sherman Street
Watertown, NY 13601

U.S. SOCIAL SECURITY ADMIN.                             TOMASINA DiGRIGOLI, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II                Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Sandra J. Warthan

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on

the pleadings.  (Dkt. Nos. 11, 15.)  For the reasons set forth below, Plaintiff's motion is denied

and Defendant's motion is granted.

# I.     RELEVANT BACKGROUND

## A.     Factual Background

Plaintiff was born in 1970.  The highest level of education that she achieved was completing the sixth grade in school.  Plaintiff's employment history consists of working as a factory-line assembler, stock clerk, and cashier.  Generally, Plaintiff's alleged disability consists of post-traumatic stress disorder ("PTSD"), depression, anxiety, mild arthritis, stomach tremors, fibromyalgia, degenerative disc disease, and joint problems.  Plaintiff's alleged disability onset date is May 31, 2005.

## B.     Procedural History

On August 25, 2010, Plaintiff applied for Supplemental Security Income and Social Security Disability Insurance.  (Tr. 291-294.)  Plaintiff's application was initially denied on December 20, 2010, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  (Tr. 136-141, 144.)  On December 15, 2011, Plaintiff appeared before the ALJ, Marie Greener.  (Tr. 80-109.)  On February 27, 2012, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (Tr. 112-131.)  Thereafter, Plaintiff filed a request for review, and, on July 23, 2013, the Appeals Council remanded the case.  (Tr. 132-35.)  Specifically, the Appeals Council instructed the ALJ to reexamine the following five issues: (1) the severity of Plaintiff's fibromyalgia; (2) the vocational evidence regarding the extent to which Plaintiff's limitations erode the occupational base for light work; (3) the issue of disability; (4) Plaintiff's subjective complaints; and (5) Plaintiff's maximum residual functional capacity.  (*Id.*)

On July 9, 2014, Plaintiff appeared before the ALJ for a second hearing. (Tr. 45-79.) On September 18, 2014, the ALJ issued a written decision that was once again unfavorable to Plaintiff. (Tr. 17-44.) On December 7, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (Tr. 17-34.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 31, 2005, her alleged onset date. (Tr. 23.) Second, the ALJ found that Plaintiff had the following three severe impairments: (1) an affective disorder (variously characterized), (2) an anxiety disorder (variously characterized), and (3) cervical spine degenerative changes. (Tr. 23-26.) Third, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix, 1. (Tr. 26-28.) In so doing, the ALJ considered the listings in Sections 12.04 and 12.06 (the "Listings") and the criteria in Paragraphs B and C. (*Id.*) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform unskilled light work in a low-stress environment and that she should be limited to routine daily tasks, which do not significantly change in pace or location on a daily basis, and that do not require fast-paced work and more than short interactions with supervisors, co-workers, and no more than occasional interaction with the public. (Tr. 28.) Fifth, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 36.) Sixth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, considering her age, education, work experience, and RFC. (Tr. 36-38.)

## II.     THE PARTIES' BRIEFINGS

### A.     Plaintiff's Arguments

Generally, Plaintiff makes the following five arguments in support of her motion for judgment on the pleadings.

First, Plaintiff argues that the ALJ failed to properly assess the severity of her symptoms of fibromyalgia.  (Dkt. No. 11, at 15-17 [Pl.'s Mem. of Law].)[1]  Specifically, Plaintiff argues that the ALJ failed to find that her widespread physical pain constituted a severe impairment because (a) the medical evidence of record clearly shows that she complained of such pain since 2006, (b) she treated with Dr. Andrew Hillburger, M.D., a neurlogist, and at North Country Neurology, P.C., for her fibromyalgia for several years, (c) it was noted multiple times that fibromyalgia was believed to be the source of her pain, and (d) none of her many care providers have questioned her diagnosis of fibromyalgia.  (*Id.* at 16.)  Plaintiff further argues that, although she was referred to a rheumatologist, she could not afford to see a specialist, which prevented her from receiving an "official" diagnosis.  (*Id.*)  Nevertheless, Plaintiff argues that her well-documented symptoms demonstrate that her fibromyalgia is more than a *de minimis* claim and, by failing to recognize the full extent of her symptoms, the ALJ failed to adequately consider her limitations.  (*Id.* at 17.)

Second, Plaintiff argues that the ALJ failed to properly assess her subjective complaints of pain and disabling symptoms by failing to consider the seven statutory factors under 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).  (*Id.* at 17-18.)  Specifically, Plaintiff argues that the ALJ

---

[1]     Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

(a) noted that Plaintiff had a Global Assessment Functioning ("GAF") score of 65 but neglected to discuss much-lower scores at which she was consistently assessed, (b) found that Plaintiff's representations that she has "pain all over" were not supported by record evidence even though she treated with multiple doctors and was referred to a specialist for such pain, (c) improperly construed Plaintiff's "poor earnings record" and work history as an unwillingness to work even though Plaintiff testified that she made multiple attempts to return to work, and (d) misconstrued Plaintiff's testimony that she cares for a significant other who is physically disabled to mean that, not only are Plaintiff's activities of daily living not compromised, but she is also able to care for another's daily needs. (*Id.* at 18-19.) Plaintiff further argues that her credibility is supported by her longitudinal medical record, which demonstrates her persistent and long-term attempts to obtain relief from her symptoms. (*Id.* at 19.)

Third, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to (a) assess Plaintiff's function-by-function abilities, and (b) properly represent the evidence regarding the nature and extent of Plaintiff's limitations. (*Id.* at 19-22.) Specifically, Plaintiff argues that the ALJ incorrectly found that her GAF score of 50 was inconsistent with the "marked" limitations assessed by her treating providers. (*Id.* at 21.) Furthermore, Plaintiff argues that, although the ALJ consistently noted in her decision that she was described as "pleasant and affable," the record demonstrates that she had several issues dealing with her treating providers, including, among other things, feeling overwhelmed and losing her temper. (*Id.*)

Fourth, Plaintiff argues that the ALJ failed to properly analyze and review the medical evidence of record in determining her mental RFC assessment at each of the five steps outlined in 20 C.F.R. § 404.1520a. (*Id.* at 22.) Specifically, at the first step (§ 404.1520a[b][1]), Plaintiff

argues that the ALJ failed to specify or evaluate any of the medical evidence that supports the presence of her mental impairments, even though the ALJ still found them to be "severe." (*Id.* at 22-23.) At the second step (§ 404.1520a[c][2]), Plaintiff argues that the ALJ failed to rate the degree of her functional limitation and otherwise skipped this step. (*Id.* at 23.) At the third step (§ 404.1520a[c][3]), commonly known as the "special technique," Plaintiff argues that the ALJ made findings that are not consistent with the opinions of her treating physicians, which indicated that she had marked limitations in all relevant areas, and that the ALJ cited inaccurate facts and relied on her own opinion to support her findings. (*Id.*) At the fourth step (§ 404.1520a[d][2]), Plaintiff argues that, had the ALJ properly considered the medical evidence instead of misconstruing the record and relying on her own opinion, she would have made findings consistent with those made by Plaintiff's treating physicians. (*Id.* at 24.) At the fifth step, Plaintiff argues that the ALJ's mental RFC assessment is contrary to the medical evidence of record because there is insufficient evidence to support the ALJ's finding that Plaintiff's sole mental limitation is the need for low stress work. (*Id.* at 24-25.)

Fifth, and finally, Plaintiff argues that the ALJ failed to properly follow the treating physician rule when she gave "little weight" to the medical source statements made by nurse Ann Bates, NPP, Dr. Steven Fogelman, M.D., and Dr. Maritza Santana, M.D., regarding Plaintiff's mental limitations. (*Id.* at 25-26.) As an initial matter, Plaintiff argues that these medical source statements were consistent with several other medical opinions of record. (*Id.*) Nevertheless, even if the opinions are inconsistent, Plaintiff argues that the ALJ failed to consider the opinions in light of the eight regulatory factors under 20 C.F.R. § 416.927(c) in order to determine how much weight they should have been accorded. (*Id.* at 26-27.)

## B.     Defendant's Arguments

Generally, Defendant makes the following five arguments in opposition to Plaintiff's motion for judgment on the pleadings and in support of her own such motion.

First, Defendant argues that the ALJ properly evaluated the severity of Plaintiff's symptoms of fibromyalgia.  (Dkt. No. 15, at 8 [Def.'s Mem. of Law].)  Specifically, Defendant argues that the ALJ's evaluation is supported by the opinions of consultative physician Roberto Rivera, M.D., who found no trigger points related to pain after examining Plaintiff in November of 2010.  (*Id.* at 9.)  Similarly, Defendant argues that Dr. Hillburger's "guess" that Plaintiff "probably does have fibromyalgia although most of her laboratories are normal" does not constitute a formal diagnosis of fibromyalgia, especially when Dr. Hillburger did not find any trigger points during three examinations between July 2007 and April 8, 2008.  (*Id.*) Furthermore, Defendant argues that, although consultative physician Dr. Elke Lorenson, M.D., found two trigger points during a physical examination of Plaintiff in September of 2013, this is well short of the requirement under SSR 12-2p that a claimant have at least 11 trigger points before he/she is considered to have fibromyalgia.  (*Id.*)

Second, Defendant argues that the record evidence supports the ALJ's determination that Plaintiff's subjective complaints were not entirely credible for the following three reasons: (1) despite Plaintiff's allegations of pain, there was no indication that she was taking pain medication; (2) although Plaintiff complained of headaches occurring six to nine times per month, she admitted that her headaches lasted for only forty-five minutes; and (3) Plaintiff's complaints were inconsistent with her activities and lifestyle including being able to make the

bed, wash dishes, cook, do laundry, walk the dog, read books, engage in woodcrafting, watch television, take care of her pets, manage her money, use public transportation, and drive to familiar places. (*Id.* at 11.)

Third, Defendant argues that the ALJ's RFC assessment is supported by substantial evidence because (a) the ALJ's finding that Plaintiff retained the physical ability to perform work at all exertional levels was supported by the opinions of Dr. Lorenson and Dr. Rivera, who both made many normal physical findings, and (b) the ALJ's RFC assessment with respect to Plaintiff's mental abilities is supported by the opinions of consultative psychologist, Dr. Dennis Noia, Ph.D., who made many normal mental status findings, and state agency psychiatric consultant, Dr. Zenaida Mata, M.D., who found that Plaintiff retained the ability to perform unskilled work with limited exposure to the general public on a sustained basis. (*Id.* at 12-13.)

Fourth, Defendant argues that the ALJ properly evaluated Plaintiff's mental impairments and correctly concluded that she did not meet the Listing requirements of Sections 12.04 and 12.06. (*Id.* at 14.) More specifically, Defendant argues that the ALJ properly applied the special technique to determine the severity of Plaintiff's mental impairments and that her findings were supported by Dr. Malta's opinion who likewise found that Plaintiff did not have any marked limitations in the areas identified under Paragraph B. (*Id.* at 14-15.)

Fifth, and finally, Defendant argues that the ALJ properly evaluated the medical opinions of record. Specifically, Defendant argues that the ALJ discussed the opinions of nurse Bates and Dr. Fogelman, who opined that Plaintiff had marked limitations in all areas of mental functioning except for interacting with the public, which they rated a mild limitation. (*Id.* at 16.) However, Defendant argues that it was appropriate for the ALJ to assign little weight to their opinions

because (a) the ALJ expressed doubt regarding whether there was an actual treatment

relationship between Plaintiff and Dr. Fogelman (given that the treatment notes indicated that,

except for one occasion, Plaintiff saw only nurse Bates), (b) their assessment was not consistent

with the clinical evidence of record that consistently described Plaintiff as pleasant and affable,

and (c) their assessment was also inconsistent with the many benign mental status findings

reported by Dr. Jeanne Shapiro, Ph.D., and Dr. Noia.  (*Id.* at 16-17.)  In addition, Defendant

argues that the ALJ discussed the opinion of Dr. Santana who found that Plaintiff had marked

limitations in her ability to interact appropriately with others.  (*Id.* at 17.)  Once again, however,

the ALJ appropriately gave little weight to this opinion because it was based on only one

evaluation of Plaintiff on December 12, 2011, and Dr. Santana reported many benign mental

findings such as noting that Plaintiff was alert, fully oriented, pleasant, cooperative, verbally

spontaneous, had good eye contact, fair concentration, and good insight and judgment.  (*Id.*)

## III.     RELEVANT LEGAL STANDARD

### A.      Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether

an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906

F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if

the correct legal standards were not applied, or the determination was not supported by

substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a

reasonable basis for doubt whether the ALJ applied correct legal principles, application of the

substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that

a claimant will be deprived of the right to have her disability determination made according to

the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.     **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982), *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## IV.   ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A.   Whether the ALJ Erred at Step Two by Failing to Find that Plaintiff's Fibromyalgia Is a Severe Impairment

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in her memorandum of law. (Dkt. No. 15, at 8-9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Briggs v. Astrue*, 09-CV-1422, 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Bianchini, M.J.), adopted, 2011 WL 2669463 (N.D.N.Y. July 7, 2011) (Scullin, J.). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include the following: (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely its by diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013).

An ALJ should make a finding of "'not severe'. . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR

85-28, 1985 WL 56856, at *3. The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Dixon*, 54 F.3d at 1030.

Often, when there are multiple impairments and the ALJ finds some but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, 10-CV-0537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (D'Agostino, J.). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

As an initial matter, the Court agrees with Defendant that Plaintiff failed to proffer sufficient evidence demonstrating that her fibromyalgia is a medically determinable impairment. Under SSR 12-2p, fibromyalgia is considered a medically determinable impairment if there is a physician diagnosis of fibromyalgia and he provides evidence meeting either the 1990 American College of Rheumatology Criteria for Classification of Fibromyalgia or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). These two diagnostic regimes establish two different sets of specific medical findings necessary for a fibromyalgia diagnosis, either of which is sufficient to establish the impairment.[2] *Id.*, at *2-3.

---

[2]     The first set of criteria requires (1) a "history of widespread pain–that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)–that has

Granted, a "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008); *see also* SSR 12-2p, 2012 WL 3017612, at *2 ("We cannot rely upon the physician's diagnosis alone."). Nor can a physician's diagnosis be "inconsistent with the other evidence in the person's case record." SSR 12-2p, 2012 WL 3017612, at *2. However, "denying a fibromyalgia-claimant's claim of disability based in part on a *perceived* lack of *objective* evidence is reversible error." *Campbell v. Colvin*, 13-CV-0451, 2015 WL 73763, at *6 (N.D.N.Y. Jan. 6, 2015) (Sharpe, C.J.) (emphasis added). This is because "a growing number of courts, including our own, have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (internal quotation marks omitted). Indeed, "[fibromyalgia's] cause or causes are unknown, there is no cure and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 233 (E.D.N.Y. 2014) (internal quotation marks omitted).

In the present case, the ALJ found that Plaintiff was never formally diagnosed with fibromyalgia because Dr. Hillburger "guessed" that Plaintiff "probably did have fibromyalgia"

---

persisted . . . for at least 3 months" and (2) "[a]t least 11 positive tender points on physical examination . . . found bilaterally (on the left and right sides of the body) and both above and below the waist" and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, 2012 WL 3104869, at *2-3.

    The second set of criteria requires "all three of the following criteria," including (1) "[a] history of widespread pain," (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." *Id.* at *3.

based upon her complaints of having pain "throughout her body" even though her "laboratories are normal[,]" and he did not find any positive trigger points over the course of three examinations. (Tr. 23, 404-05.) Similarly, the ALJ noted that Plaintiff's other "primary care providers do not appear to have examined the claimant to confirm the presence of 11/18 . . . trigger points." (Tr. 23.) The ALJ further noted that Dr. Lorenson found two positive trigger points; however, this is well short of the eleven trigger points required for a formal diagnosis (under the 1990 American College of Rheumatology Criteria for Classification of Fibromyalgia). (*Id.*)

Despite the lack of objective evidence to support Plaintiff's claim of fibromyalgia, the ALJ also considered Plaintiff's subjective complaints of pain, which she found to be not entirely credible.[3] The ALJ found that, although Plaintiff complained of disabling pain and discomfort, she was still able to engage in many activities of daily living, such as cooking and cleaning two to three times a week (depending on pain), shopping once a week, showering five to six times a week, read, watch television, do woodcrafting, and care for a significant other who is disabled. (Tr. 30, 95.) *See Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009) (finding that the plaintiff's activities, including childcare, watching television, reading, using the computer, and occasional vacuuming, washing dishes, and driving, supported the ALJ's determination that the plaintiff's alleged symptoms were not disabling); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir. 1980) (finding that the plaintiff's report that she could "cook, sew, wash and shop, so long as she did these chores slowly and takes an afternoon rest" supported the ALJ's determination that the plaintiff's alleged symptoms were not disabling.); *but see Brosnahan v. Barnhart*, 336 F.3d 671,

---

[3]     For the reasons discussed below in Part IV.E. of this Decision and Order, the Court finds that the ALJ's credibility determination was proper.

677 (8th Cir. 2003) ("[I]n the context of a fibromyalgia case, . . . the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity.").  The ALJ also found that there is "no indication that the claimant was taking pain medication currently, despite her allegations of constant, daily disabling pain."  (Tr. 30.)

Based upon the foregoing, the ALJ properly determined that Plaintiff failed to satisfy her burden that she received a formal diagnosis of fibromyalgia that was supported by objective tests and/or that her subjective complaints of pain constitute a severe impairment under the regulations.  In any event, even if the Court were to find that the ALJ erred in determining that Plaintiff's fibromyalgia was not severe, she considered the limiting effects of all of Plaintiff's impairments later in her RFC analysis.  (Tr. 28-30.)  *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding alleged step-two error harmless because ALJ considered impairments during subsequent steps); *Snyder v. Colvin*, 13-CV-0585, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) (Sharpe, C.J.) ("[W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through sequential evaluation on the basis of combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless.").

B.     **Whether the ALJ's Assessment of Plaintiff's Mental Impairments Is Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendant in her memorandum of law.  (Dkt. No. 15, at 14-15 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). The Second Circuit has explained as follows:

> This technique requires the reviewing authority to determine [at step two] first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If the claimant is found to have such an impairment, [at step three] the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *Id.* § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits. *Id.* § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity [in step four]. *Id.* § 404.1520a(d)(3).

*Kohler*, 546 F.3d at 265-66.

Moreover, the regulations "require the ALJ's written decision to reflect application of the technique, and explicitly provide that the decision '*must* include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'" *Id.* at 266 (quoting 20 C.F.R. § 404.1520a[e][2]). "If the ALJ fails to provide specific findings regarding the degree of limitation in each of the four functional areas, then the reviewing court will be unable to determine whether 'there is substantial evidence for the ALJ's conclusion that

[the Plaintiff's] impairment, while severe, was not as severe as any listed disabling condition,' and the case should be remanded." *Fait v. Astrue,* 10-CV-5407, 2012 WL 2449939, at *5 (E.D.N.Y. June 27, 2012) (alteration in original) (quoting *Kohler,* 546 F.3d at 267-88).

Here, the ALJ made specific findings as to the degree of limitation in each of the functional areas and gave an explanation for each of her conclusions. (Tr. 27.) Because the ALJ did not find that Plaintiff's mental impairments cause at least two "marked" limitations, or one "marked" limitation and repeated episodes of decompensation, she found that the Paragraph B criteria was not satisfied. (Tr. 28.) Similarly, the ALJ found that the Paragraph C criteria was not met. (*Id.*)

As discussed above in Part II.A. of this Decision and Order, Plaintiff argues that the ALJ's findings are inconsistent with the opinions of several medical sources, including the opinions of nurse Bates, Dr. Fogelman, and Dr. Santana, who opined that Plaintiff had marked limitations in almost all functional areas. However, the Court finds that the ALJ's decision to accord these assessments little weight was supported by substantial evidence. Specifically, with respect to the joint opinion of nurse Bates and Dr. Fogelman, the ALJ noted that there was no evidence that Dr. Fogelman ever examined Plaintiff or reviewed her progress notes. (Tr. 32.) Indeed, at the most recent administrative hearing, the ALJ noted that she did not see any evidence in the record indicating that Dr. Fogelman personally met with Plaintiff. (Tr. 49, 59.) In response, Plaintiff stated that "I've never heard that name before" and her attorney clarified that Dr. Fogelman was nurse Bates' supervising physician and that Dr. Fogelman had countersigned her records. (Tr. 49.) Accordingly, the ALJ properly found that the joint opinion was not entitled to any additional weight. 20 C.F.R. 416.927(c); 20 C.F.R. 404.1527(c).

In any event, the ALJ properly found that the joint opinion was not fully consistent with the clinical evidence of record because (a) although Plaintiff presented as depressed and anxious, she also presented as happy and in a "good" mood, (b) even when Plaintiff was found to be angry or depressed, nurse Bates consistently described her as "pleasant and affable" and she was able to fully participate in her treatment, (c) the consultative psychiatric examinations performed by Drs. Noia and Shapiro documented that Plaintiff presented with good social skills, logical and coherent thinking, and with intact attention/concentration and recent/remote memory skills, (d) Plaintiff consistently received a GAF score of 50, which is on the borderline between serious and moderate symptoms or serious and moderate limitations,[4] and (e) the joint opinion does not discuss Plaintiff's ability to perform a wide range of activities of daily living. (Tr. 32.)

With regard to Dr. Santana's opinion, Dr. Santana opined that Plaintiff had marked limitations in her abilities to interact appropriately with others and manage work stress. (Tr. 586.) It was proper for the ALJ to accord this opinion little weight because (a) Dr. Santana's assessment was based on only one evaluation of Plaintiff without any evidence of a follow-up evaluation, (b) Dr. Santana initially checked the boxes for moderate limitations but then changed them to marked without any explanation, and (c) Dr. Santana's opinion that Plaintiff is markedly limited in interacting with others is not supported by her notes from her examination of Plaintiff nor by the record as a whole. (Tr. 32-33.) *See Fiducia v. Comm'r of Soc. Sec.*, 13-CV-0285,

---

[4]      "GAF is a scale that indicates a clinician's overall opinion of an individual's psychological, social, and occupational functioning." *Marvin v. Colvin*, 12-CV-1779, 2014 WL 1293509, at *2 (N.D.N.Y. Mar. 31, 2014) (Sharpe, C.J.). "GAF scores of forty-one to fifty indicate that the individual has serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Marvin*, 2014 WL 1293509, at *2 (internal quotation marks omitted).

2015 WL 4078192, at *4 (N.D.N.Y. July 2, 2015) (Mordue, J.) (finding that a marked limitation in interacting with others does not establish that the plaintiff is disabled, particularly where the ALJ limited the plaintiff to occasional interaction with the public and coworker).

Finally, the Court finds that the ALJ properly gave little weight to the assessment from Carthage Area Behavioral Health Center, which noted several marked and extreme limitations, for the reasons discussed by the ALJ. (Tr. 31.) Although Plaintiff argues that the ALJ's determination is inconsistent with the opinions of Drs. Noia and Shapiro, Plaintiff fails to specify what parts of their opinions are inconsistent. Nevertheless, the Court has reviewed their respective treatment notes and finds that Dr. Noia's opinion is not inconsistent with the ALJ's determination (Tr. 704) and finds that the ALJ properly gave Dr. Shapiro's opinion little weight (Tr. 33). Accordingly, for the foregoing reasons, the Court finds that the ALJ's assessment of Plaintiff's mental impairments is supported by substantial evidence.

**C.     Whether the ALJ Violated the Treating Physician Rule**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in her memorandum of law. (Dkt. No. 15, at 15-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the

frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 416.927(c)(2)(i)-(iv), 404.1527(c)(1)-(5). "Although the ALJ is required to explicitly consider all of the factors, the ALJ is not required to explicitly 'address or recite' each factor in his decision." *Reyes v. Colvin*, 13-CV-4683, 2015 WL 337483, at *16 (S.D.N.Y. Jan. 26, 2015); *see also Marquez v. Colvin*, 12-CV-6819, 2013 WL 5568718, at *12 (S.D.N.Y. Oct. 9, 2013) ("Although the ALJ did not explicitly recite the factors, his decision nonetheless adequately considered each factor."). "If it is unclear whether the ALJ explicitly considered all of the factors, the court may search the record to assure that the treating physician rule has not been traversed, but only when the ALJ gives good enough reasons to allow the court to engage in such an inquiry." *Reyes*, 2015 WL 337483, at *16 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 [2d Cir. 2004]). Finally, the ALJ is also required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*; *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 [2d Cir. 1998]). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Reyes*, 2015 WL 337483, at *14.

Here, the ALJ's reasoning in her decision, along with the facts in the record, reasonably allow the Court to conclude that she considered the treating physician rule even though she did not explicitly recite each factor. (Tr. 26, 31-36.) Furthermore, the Court finds that the ALJ gave proper weight to the opinions of nurse Bates, Dr. Fogelman, and Dr. Santana, for the reasons discussed above in Part IV.B. of this Decision and Order and for the reasons stated by Defendant

in her memorandum of law. (Dkt. No. 15, at 16-18 [Def.'s Mem. of Law].) *See also Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) (Suddaby, J.) ("[C]onflicts in evidence . . . are for the Commissioner to resolve. . . . Where, as here, the Commissioner's decision 'rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner.'") (quoting *White v. Comm'r*, 06-CV-0564, 2008 WL 3884355, at *11 [N.D.N.Y. Aug. 18, 2008] [Kahn, J.]). Accordingly, the Court finds that the ALJ did not traverse the treating physician rule.

**D.      Whether the ALJ's RFC Assessment Is Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendant in her memorandum of law (Dkt. No. 15, at 12-14 [Def.'s Mem. of Law]) as well as for the reasons discussed above in Parts IV.B. and IV.C. of this Decision and Order. To those reasons, the Court adds the following point regarding Plaintiff's alleged physical impairments and the ALJ's determination that she can perform light work.

RFC is defined as

> what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, 12-CV-6640, 2013 WL 4647643, at *8

(W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545[a][3]-[4]).  The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms.  20 C.F.R. § 404.1545(b)-(e).  The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairments may affect his ability to work.  20 C.F.R. § 404.1513(c)(d).  Finally, an ALJ's RFC assessment "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)

Here, Plaintiff argues that the ALJ failed to assess Plaintiff's function-by-function abilities, resulting in an RFC assessment that is not supported by substantial evidence.  However, the Second Circuit has stated that an explicit function-by-function analysis is unnecessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous[.]" *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

The ALJ's RFC assessment in the present case limited Plaintiff to unskilled light work.  (Tr. 28.)  Light work requires the ability to sit for six hours, stand or walk for six hours, lift up to 20 pounds at a time, and frequently lift or carry up to ten pounds during an eight-hour workday.  20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251 (1983).  In making this assessment, the ALJ gave "considerable weight" to the opinion of consultative examiner, Dr. Elke Lorenson, who opined that Plaintiff "can lift and carry up to 20 pounds frequently, sit for 8

hours at a time for a total of 8 hours in an 8 hour workday, stand for 8 hours at a time for a total of 8 hours in an 8 hour workday, walk for 8 hours at a time for a total of 8 hours in an 8 hour workday, can occasionally reach, and frequently push/pull with the upper extremities, can continuously handle, finger and feel with the upper extremities, occasionally engage in postural activities such as stair climbing and should avoid working with unprotected heights." (Tr. 36.) The ALJ noted that she did not give any weight to Dr. Lorenson's opinion that Plaintiff should be limited to occasional reaching for the reasons explained in her decision. (*Id.*) The ALJ also gave "some weight" to Dr. Rivera's opinion that Plaintiff has no limitations in sitting, standing, walking and lifting. (Tr. 35.) Finally, the ALJ discussed her reasoning for not giving equal or greater weight to the opinions of other treating sources regarding Plaintiff's impairments. (Tr. 31-35.)

The Court finds that the ALJ's analysis affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that a function-by-function analysis would be unnecessary or superfluous. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary.") Furthermore, the Court notes that it was proper for the ALJ to rely on the opinions of consultative examiners, such as Drs. Lorenson and Rivera, which constitute substantial evidence. *See Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) ("It is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions. . . . Moreover, an ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence.") (collecting cases).

**E.      Whether the ALJ Failed to Properly Assess Plaintiff's Subjective Complaints of Pain and Disabling Symptoms**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendant in her memorandum of law.  (Dkt. No. 15, at 9-11 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (Mordue, C.J., adopting Report-Recommendation of Bianchini, M.J.) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility:

> (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* (citing §§ 404.1529[c][3][i]-[vii], 416.929[c][3][i]-[vii]).  Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are not entirely credible.  (Tr. 29.)  Throughout her decision, the ALJ articulated the inconsistencies that she considered in assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged.  Specifically, the ALJ considered (a) inconsistencies in Plaintiff's statements regarding her alleged symptoms and limitations, (b) the measures that Plaintiff took to relieve her symptoms, (c) inconsistencies in Plaintiff's reports regarding her symptoms and activities of daily living, and (d) medical opinion evidence that was inconsistent with Plaintiff's allegations of disabling symptoms.  (Tr. 29-30.)  For example, the ALJ noted that there was no evidence that Plaintiff was taking pain medication, "despite her allegations of constant, daily disabling pain." (Tr. 30.)  Indeed, Plaintiff testified at the first administrative hearing that she does not currently take pain medication but will use ibuprofen as needed.  (Tr. 90.)  Although Plaintiff argues that

she uses a transcutaneous electrical nerve ("TENS") unit[5] to help with her pain, she testified that the TENS unit was her fiance's and, therefore, it was not actually prescribed to her.  (Tr. 91.)

Plaintiff correctly argues that a longitudinal medical record demonstrating persistent, long-term attempts to obtain relief from symptoms will strongly indicate credibility regarding her alleged symptoms.  *See Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64 (11th Cir. 2010) ("Somogy's complaints of disabling pain are bolstered by evidence that she made numerous visits to her doctors over the course of several years, underwent numerous diagnostic tests, and was prescribed numerous medications.").  However, on balance, the ALJ properly exercised her discretion in finding Plaintiff's subjective complaints to be not entirely credible in light of the numerous inconsistencies between her complaints and the objective evidence as well as the other record evidence.  (Tr. 29-30.)  *See also Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.").  Similarly, Plaintiff's argument that the ALJ failed to explicitly evaluate her complaints in light of the seven statutory factors noted above is also unpersuasive. "Because the ALJ thoroughly explained his credibility determination and the record evidence permits us to glean the rationale of the ALJ's decision, the ALJ's failure to discuss those factors not relevant to his credibility determination does not require remand." *Cichocki*, 534 F. App'x at 76.  Here, the ALJ complied with the Regulations and articulated the inconsistencies that she considered in discrediting Plaintiff's allegations of disabling impairments.

---

[5]        "A TENS Unit sends an electrical current through the skin for pain control.  The unit is usually connected to the skin using two or more electrodes.  A typical battery-operated TENS unit is able to modulate pulse width, frequency and intensity." *Stephenson v. Colvin*, 14-CV-8132, 2016 WL 153091, at *4 n.18 (S.D.N.Y. Jan. 12, 2016).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is

**GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it

is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 9, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge